CHARLES A. VEATCH, Respondent, v. W. W. NORMAN, Appellant.

St. Louis Court of Appeals, June 24, 1902.

1. **Real Estate Broker: SERVICES.** A real estate broker undertook the sale of timber rights on a large tract of defendant's land, represented to contain certain quantities per acre of white oak and other good timber; he brought defendant and a prospective purchaser together, resulting in the sale of a large part of the land directly by defendant on cheaper terms than his original offer by plaintiff and before a reasonable time to perform the agreement of brokerage had elapsed; meanwhile plaintiff expended valuable time and services towards effecting a sale; *held*, that plaintiff was entitled to reasonable compensation for the services actually rendered by him, on the facts stated in the opinion.

2. ———: ———: Where a broker introduced to his principal a purchaser, able and willing to buy on the principal's terms, the broker is entitled to compensation, even though the sale is not consummated on those terms owing to the failure of the property to answer the representations of the owner touching its quality.

3. **Contract: REASONABLE VALUE OF SERVICES: PETITION.** In a suit on contract, if the facts warrant a recovery of reasonable value of the services of a broker, his right thereto will not be defeated because his petition may ask a specific or agreed commission.

4. **Appeals: INVOLUNTARY NONSUIT: MOTION TO SET ASIDE INVOLUNTARY NONSUIT.** Under the Missouri law permitting appeals from orders for new trial, such an order on motion to set aside an involuntary nonsuit may properly form the basis of an appeal (following Coatney v. Railway, 151 Mo. 35).

5. **Practice, Trial: ERROR IN INSTRUCTION: PRACTICE, APPELLATE.** Where the circuit court grants a new trial to plaintiff, because of error in an instruction to find for defendant, the ruling will be sustained on appeal where the evidence permits a recovery by plaintiff upon any ground within range of his pleadings.

Appeal from St. Louis City Circuit Court.—*Hon. William Zachritz,* Judge.

AFFIRMED.

*J. F. Green* for appellant.

(1) Before a broker can recover compensation for effecting a sale of property, he must show that he found and procured a purchaser who was willing and able to purchase the property upon the exact terms proposed by his principal. Warren v. Gram, 71 Mo. App. 640; Reiger v. Reiger, 29 Mo. App. 421; Yoder v. White, 75 Mo. App. 155; Blackwell v. Adams, 28 Mo. App. 61; Stinde v. Blesh, 42 Mo. App. 478; Hackman v. Gutweiler, 66 Mo. App. 244; Hayden v. Grillo, 26 Mo. App. 289; Cox v. Bowling, 54 Mo. App. 289. (2) Plaintiff having sued upon a written contract must recover upon the contract or not at all, and where

the testimony shows a failure to comply with the contract as pleaded, there can be no recovery.   Cole v. Armour, 154 Mo. 351; Huston v. Taylor, 140 Mo. 252; Clements v. Yates, 69 Mo. 625; Furth v. Anderson, 37 Mo. 354.

*F. W. Imsiepen* and *S. S. Merrill* for respondent.

(1)   The modified contract as pleaded was supported by the evidence, and defendant's demurrer to the evidence admitted every material fact proven, and every reasonable inference which might be drawn from the testimony to be true, and should never have been sustained by the trial court unless the evidence, when thus considered, failed to make proof of some essential fact.   Young v. Webb City, 150 Mo. 333; Bank v. Simpson, 152 Mo. 638; Keonn v. Railroad, 141 Mo. 86; Roe v. Annan, 80 Mo. App. 198.   (2)   It is a principle of law in this State, established by a long series of cases, that when the real estate is placed in the hands of a real estate agent for sale, and a sale is brought about through his exertions, or he is the procuring cause, he is entitled to his compensation. Grether v. McCormack, 79 Mo. App. 325; Henderson v. Mace, 64 Mo. App. 393; Tyler v. Parr, 52 Mo. 249; Timmerman v. Craddock, 70 Mo. 638; Bell v. Kaiser, 50 Mo. 150.   (3)   Plaintiff had a right to plead a written contract carried out as modified by defendant, such contract so modified, being the contract set out in the pleading.   Grether v. McCormack, 79 Mo. App. 325; Woods v. Stephens, 46 Mo. 556; Helm v. Wilson, 4 Mo. 44; Wright v. Orrison, 68 Mo. App. 582; Stinde v. Besch, 42 Mo. App. 581; Wetzel v. Wagner, 41 Mo. App. 516.   (4)   The designation by a principal to his agent of the quality and quantity of the subject of the agency, fixes the standard of value, and, hence, is a part of the *res gesta,* and such designation authorizes

the agent to warrant the quality, quantity and condition of the articles sold. Palmer v. Hatch, 46 Mo. 585; Samuel v. Bartee, 53 Mo. App. 587; Andrews v. Kneeland, 6 Cowen 354. (5) If a broker's contract is discharged by the breach of his principal, the broker acquires three distinct rights: (a) The right of exoneration. (b) If he has done anything under the contract he may sue on a *quantum meruit,* or (c) on the terms of the contract broken. Anson Agency (1887), star page 309. (6) The principal's acts of interference with his broker's negotiations, constitute a willful or fraudulent act, in violation of his undertaking express or implied. Wood v. Stephens, 46 Mo. 556; Hines v. Henry, 36 N. J. Law, 328; Doonan v. Ives, 75 Ga. 302; Bell v. Kaiser, 50 Mo. 150; Grether v. McCormack, 79 Mo. App. 325. Obstruction of performance by one party is a waiver of performance by the other party. And a party who disables himself from performing his contract before default by the other party, or creates an antecedent impossibility, waives the performance of the acts by the latter, while otherwise he would be bound to perform as condition precedent to a recovery on the contract. Hart v. Hopson, 52 Mo. App. at 193; Hines v. Brettelle, 70 Mo. App. 344; Collins v. Delaporte, 115 Mass. 162; Hawley v. Keeler, 53 N. Y. 121; Anson Contract of Agency (1887), star pp. 285 and 286; also note foot of page 375.

BARCLAY, J.—This appeal is from an order granting a new trial in an action brought by plaintiff to recover commissions for procuring a purchaser for certain lands of defendant in southeast Missouri.

A brief outline of the case presented by the amended petition is, that defendant, January 4, 1900, made a written proposal to plaintiff to pay him nine hundred and eighty dollars if he secured a purchaser, at five dollars an acre, for the timber rights upon a

certain tract of land of defendant, covering an area of 5,480 acres in New Madrid county, Missouri, which defendant represented as "a body of good wagon oak" timber which would "cut 4,000 feet white oak, 1,000 feet ash and hickory, 3,000 feet gum and elm per acre."

Plaintiff avers an acceptance of defendant's proposition about January 8, 1900; that plaintiff procured a purchaser for defendant's said timber rights and notified defendant thereof, and that defendant thereafter completed the sale to said party for the timber rights upon a large part of the land mentioned, but refused to pay the commission earned by the plaintiff.

The answer was a general denial.

The cause came on for trial before Judge ZACHRITZ and a jury. At the close of the evidence, the court by an instruction declared the law to be that plaintiff could not recover. Whereupon plaintiff took a nonsuit with leave, etc.

On plaintiff's motion, based on the giving of that instruction, the trial court took off the nonsuit and granted a new trial, assigning that ruling as error. From that order the defendant appealed in the usual manner.

The plaintiff's case consisted of evidence given by himself and two other witnesses on his behalf. It tended to prove that defendant represented to plaintiff by letter that he owned "a body of good wagon oak, 5,480 acres, near Henderson Mounds, on the Cotton Belt R. R." which would "cut 4,000 feet white oak, 1,000 feet ash and hickory, 3,000 feet gum and elm per acre."

Shortly afterwards (January 4, 1900) he made a proposition to plaintiff in the following terms (omitting caption and signature):

"This tract of mine would suit a cooperage company all right, but I could not allow you much commission, but if the Stanley people do not take it, I will

allow you $980 to make the deal at $5 per acre, for the entire tract of 5,480 acres. I have given the Stanley people until the 10th to decide and look over it, so if this proposition suits you, let me know and I will notify you as soon as the time is out.

"I would be more liberal with you but I bought this timber to cut myself, and am hurrying to get done here, so I can move on it.

"If I sell this lot, I know where I can buy another lot, but I would not want to buy this lot unless I sold the one I had first."

Plaintiff testified that about the eighth of January, 1900, he sent a letter to defendant accepting the offer absolutely. He testified that the letter was lost; that he had no copy; but the substance of it was given in evidence without objection. Plaintiff's account is that he immediately entered upon the performance of the contract on his part, and that after the 10th of January (between that date and the 15th) he informed defendant (by letter) of a prospective purchaser, a cooperage company whose managing officer afterwards bought a large part of the land for said company as described later. The evidence tends to show that plaintiff, with defendant's consent, proceeded toward effecting a sale of the property for defendant's account, and that he called it to the attention of Mr. Brown, the vice-president and managing officer of the Pioneer Cooperage Company, and several times offered the timber rights of defendant's tract for sale to him for his company. Defendant was then at Cape Girardeau, Missouri. Finally Mr. Brown, who had a business establishment in St. Louis, went down to Cape Girardeau and met defendant there.

Without going into the particulars of the evidence at any length, it is sufficient to say that its substance is that defendant afterwards, in March, 1900, closed a sale for $19,000 (which was at the rate of $3.95 an

acre) to the cooperage company, of about 4,800 acres of the land mentioned in the original proposition. This sale was made directly between defendant and Mr. Brown, the officer of the company introduced as a purchaser through the instrumentality of the plaintiff, according to his testimony.

The officer of the purchasing company, who closed the sale, testified on behalf of plaintiff, and his evidence permits the inference that he would have bought that part of the 5,480 acres tract which he did not buy, if it had contained the average quantity of white oak timber, as represented by plaintiff to defendant before the former undertook to dispose of the property as broker.

Defendant refused to pay plaintiff any commission in the transaction.

On this showing the learned trial judge acted as already described. This appeal of defendant followed after the order for a new trial.

1. Under the law permitting appeals from orders granting a new trial, the ruling upon a motion to set aside an involuntary nonsuit (taken with leave, etc.) may properly form the basis for an interlocutory appeal, the same as in case of an ordinary motion for new trial. Coatney v. Railway, 151 Mo. 35.

2. In support of the original ruling in the trial court, defendant contends that there was no evidence that plaintiff at any time obtained a purchaser for the entire tract on the terms mentioned in the proposition which plaintiff accepted. This is undoubtedly true. But it is not decisive of the case. Plaintiff, according to his testimony, accepted absolutely the terms of defendant's letter of January, 1900, and both parties acted on the assumption that plaintiff was engaged as broker to sell on the terms defined, after the 10th of that month. Plaintiff's evidence tends further to prove that he did some service toward performance of his

agreement by bringing together defendant and the managing officer of the company (which finally purchased a large part of the property included in the proposal) with a view to a sale.

It appears that plaintiff spent considerable time in negotiations with Mr. Brown looking to a sale, and that he prevailed upon Mr. Brown to make a close examination of the offer, and a reasonable time to make the sale had not transpired before defendant took up the negotiations himself. What is a reasonable time depends on circumstances. Here the property was situated in a distant part of the State from the plaintiff's place of business. It was of large extent (5480 acres) and of peculiar character. Its present value chiefly lay in the actual amount of timber it carried. That could be definitely ascertained only by inspection. The sale of the greater part of the land was made by defendant, March 24, 1900, without any notice to plaintiff, who had been engaged (according to his testimony) by defendant about January 8 of that year. We do not consider that the intervening time can be held, as a matter of law, to be unreasonable in the circumstances of this case. It was at least a question of fact whether or not it was unreasonable.

One settled proposition of the law of brokerage is that where the owner of such property, who has placed it in charge of a real estate broker for sale, sells a large part thereof to a purchaser introduced to him through the broker's agency and thereby renders the agreement on the part of the broker impossible of performance (after he has given valuable time and services to the subject) he becomes liable to the broker (in the absence of special terms of employment) for reasonable compensation for the services which have been actually rendered by the broker, when such sale has been made by the principal before a reasonable time has elapsed to execute the undertaking of the

broker in the premises. Glover v. Henderson, 120 Mo. 367.

3. It is established law in this State that the act of the principal can not deprive the broker of his right to compensation by taking out of his hands the negotiations with a purchaser introduced by the broker, when the purchaser is willing to buy on the terms of the principal's offer through the broker, even though the final sale by the principal is on other terms. Bailey v. Chapman, 41 Mo. 536; Carpenter v. Rynders, 52 Mo. 278. There was some testimony before the jury in this case from which it might be inferred that the purchaser would have bought the entire tract if it had been found to contain the kind and amount of timber which defendant stated it contained when plaintiff accepted the engagement to act as broker in effecting a sale. There is some contradiction on that issue, but that did not deprive plaintiff of the right to have the jury determine the fact.

4. If on the showing which plaintiff made of facts alleged he was entitled to recover only the reasonable value of his services, the circumstance that his petition asked a specific amount of compensation as agreed commissions would not preclude his recovery on the other theory we have just mentioned. St. Louis Trust Co. v. Bambrick, 149 Mo. 560; Sussdorf v. Schmidt, 55 N. Y. 319.

5. It will not, however, be necessary to outline the measure of plaintiff's compensation at this time. The testimony on another trial may give new light as to the rule of damages applicable, or the pleadings may possibly be amended in that particular. As was said in the case resembling this in some respects (Greene v. Cole, 103 Mo. 70): "It will be time enough to say what the measure of damages is, when the facts of the case are all disclosed and the trial court has ruled upon that subject" (p. 78).

The learned trial judge saw fit to grant a new trial, and the only question now to determine is whether or not the evidence submitted by plaintiff excludes the possibility of any recovery whatever. Otherwise the learned trial judge was not guilty of reversible error in his ruling. We hold that it does not exclude that possibility.

The order directing a new trial is affirmed. *Bland, P. J.,* and *Goode, J.,* concur.