## CITY OF FT. WORTH v. BURGESS.
### (No. 8464.)

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 25, 1916. Rehearing Denied Jan. 6, 1917.)

1. WATERS AND WATER COURSES ⊚⟹179(4)— ACTION FOR OVERFLOWING LAND — EVIDENCE.

In action for overflowing of lands caused by reservoir construction, evidence *held* sufficient to show the market value of the land immediately before and immediately after the construction of the dam.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 250, 263; Dec. Dig. ⊚⟹179(4).]

2. WATERS AND WATER COURSES ⊚⟹179(4)— EVIDENCE.

Absolute certainty is not required in proving the amount of damages, in actions for injuries to land from overflow, but it is sufficient if such proof enables the jury to assess the damages with reasonable certainty.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 250, 263; Dec. Dig. ⊚⟹179(4).]

3. EVIDENCE ⊚⟹571(7)—OPINION EVIDENCE— EXPERTS.

In an action for damage to property, the jury is not confined to the estimates of value of such property by experts, where facts are established from which the jury may reach a reasonable conclusion tested by common knowledge and experience.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2397; Dec. Dig. ⊚⟹571(7).]

4. WATERS AND WATER COURSES ⊚⟹178(2)— OVERFLOWING LAND—DAMAGES.

In action for damages to farm by dam causing overflow of part of it, the damages recoverable are the difference between the market value of the entire tract immediately before and immediately after the dam construction.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 255; Dec. Dig. ⊚⟹178(2); Damages, Cent. Dig. § 276½.]

5. EVIDENCE ⊚⟹5(2)—JUDICIAL KNOWLEDGE— VALUE OF FARM LANDS.

It is matter of common knowledge that a reasonable amount of pasture land when sold in connection with a farm has a higher market value than when sold otherwise.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 4; Dec. Dig. ⊚⟹5(2).]

6. WATERS AND WATER COURSES ⊚⟹179(3)— INJURY TO LAND—DAMAGES.

In determining the damages to land from construction of a dam causing its overflow, the plaintiff can have the jury consider the prior market value of his land for any purpose to which it was adapted and for which he desired to use it.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 249, 263; Dec. Dig. ⊚⟹179(3).]

Appeal from District Court, Tarrant County; R. B. Young, Judge.

Action by John I. Burgess against the City of Ft. Worth. From judgment for plaintiff, defendant appeals. Affirmed.

T. A. Altman and B. L. Agerton, both of Ft. Worth, for appellant. W. P. Walker, Capps, Cantey, Hanger & Short, and David B. Trammell, all of Ft. Worth, for appellee.

DUNKLIN, J. John I. Burgess recovered a judgment against the city of Ft. Worth for damages to a tract of land resulting from the construction of a reservoir, from which the defendant has appealed.

In order to impound water for the use of the city, a dam was placed across Trinity river. The water thus impounded backed up the channel of the stream and impeded the escape of water accumulating from rains in Ash creek, which flowed into the river. This obstruction of the flow of water down Ash creek caused the bed of the creek to fill up to a large extent with débris, and the result of which, together with the increased accumulation of water and débris in the river, caused the plaintiff's land situated near Ash creek to overflow after rains to a greater extent than it had done prior to the construction of said dam, and to such an extent that the land so overflowed could not be cultivated.

The tract of land owned by plaintiff consisted of 478 acres, only 232 acres of which was overflowed. Plaintiff alleged in his petition that before the dam was constructed the tract of 478 acres was reasonably worth $65 per acre as a whole, and that by reason of the construction of the dam it had been damaged in the sum of $35 per acre, or an aggregate sum of $16,720, which was the amount awarded by the jury.

[1] By its first assignment appellant insists that the evidence was insufficient to support the judgment, in that it failed to show the market value of the land immediately before and immediately after the injury. Plaintiff himself testified that before the injury complained of the land was reasonably worth $65 per acre. He did not give any estimate of the market value of the land immediately after the injury. But he did testify upon the trial as follows:

"I don't think the land could be sold at all at this time at anything like a reasonable price; I cannot say it has anything like a reasonable market value."

The evidence shows that the 232 acres of land which overflowed was bottom land lying along Ash creek, and prior to the construction of the dam had been in cultivation, but that after the construction of the dam plaintiff was compelled to abandon the cultivation of it by reason of the overflows from rains which destroyed the crops planted thereon. The evidence further showed that the balance of the 478 acres was land fit only for pasturage purposes. Plaintiff further testified as follows:

"I testified a while ago that my land at this time, that is, the time before this dam was built, was worth $60 to $65 per acre. Of course, after the dam was built it has some value, but it would be hard to dispose of it at anything like a reasonable value. I don't know whether I could find a purchaser at all or not, that is, if a man wanted a farm, but if he wanted just a little place to live on and have a few stock on it, it might be all right, but to a man who want-

ed to farm and make money I don't believe I could dispose of it to a good farmer."

B. D. Burgess, another witness, testified with reference to the 232 acres that was overflowed as follows:

"For agricultural purposes land of that kind is absolutely worthless."

S. L. McNay testified that he was acquainted with the market value of the land before the construction of the reservoir, and that the reasonable market value of the whole tract of 478 acres, taken as a whole, was at that time $65 per acre. He further testified that the 232 acres of valley land which was overflowed was worth $75 per acre, valued separately from the remainder of the tract. Plaintiff further testified that the only way he could make a profit out of the tract described in his petition would be to cultivate the bottom land. There was other testimony showing that after the construction of the dam some two or three crops planted upon the bottom land had been destroyed by overflows, and that by reason thereof plaintiff had been compelled to abandon the cultivation of the bottom land altogether. The testimony of the different witnesses relative to the value of the land before and after the construction of the dam clearly showed that they referred to dates immediately before and immediately after such construction. Appellant urged no objection to such testimony upon the ground that such was not their meaning. In the absence of any evidence to the contrary, there is no merit in the contention that there was not sufficient proof upon those issues to sustain the verdict.

[2, 3] It is well settled by the authorities that absolute certainty in proving the amount of damages in such cases as this is not required, but it is sufficient if such proof enables the jury to assess the damages with reasonable certainty. 1 Sedgwick on Damages, § 178, p. 320; 8 R. C. L. § 195; Larrimore v. Comanche Co., 32 S. W. 367; Springfield v. Dalby, 139 Ill. 34, 29 N. E. 860; Golden v. Heman Construction Co., 100 Mo. App. 20, 71 S. W. 1093. It is also well settled that the jury is not confined to the estimates of value of such property by experts whenever facts are established, as was done in the present suit and as shown by testimony already recited, from which they may reach a reasonable conclusion tested by common knowledge and experience. Houston Belt Ry. Co. v. Vogel, 179 S. W. 268, in which a writ of error was denied, as shown in 188 S. W. xvi; Larrimore v. Comanche Co., 32 S. W. 367; H. & T. C. Ry. Co. v. Hirsch, 160 S. W. 426; Widman Inv. Co. v. City of St. Joseph, 191 Mo. 459, 90 S. W. 763; Brockman Commission Co. v. Aaron, 145 Mo. App. 307, 130 S. W. 116; Sackman v. Freeman, 130 Mo. App. 384, 109 S. W. 818; City of Springfield v. Dalby, 139 Ill. 34, 29 N. E. 860.

[4] The court instructed the jury substantially, in the event of a verdict for the plaintiff upon the issue of the alleged liability of the defendant, the measure of his damages would be the difference between the market value of the entire tract of 478 acres immediately before and immediately after the construction of the dam.

Appellant insists that, as there was no evidence to show that the pasture land, considered separately from the bottom land, had been depreciated in value, there was error in the charge in allowing a recovery for injuries to the whole tract, and that the verdict of the jury upon that basis was erroneous for the same reason.

[5, 6] It is a reasonable deduction from the evidence of the plaintiff, and a matter of common knowledge also, that a reasonable amount of pasture land when sold in connection with a farm has a higher market value than when sold otherwise, and to limit plaintiff's recovery to damages for injuries to the bottom land alone would be unfair to him. Hall v. City of Austin, 20 Tex. Civ. App. 59, 48 S. W. 53; Rourke v. Central Mass. Elec. Co., 177 Mass. 46, 58 N. E. 470; Sloss-Sheffield Steel & Iron Co. v. Mitchell, 181 Ala. 576, 61 South. 934. And it was plaintiff's legal right to have the jury consider the market value of his land before the construction of the dam for any purpose to which it was adapted and for which he desired to use it. Ft. W. & N. O. Ry. Co. v. Wallace, 74 Tex. 581, 12 S. W. 227; St. L. S. W. Ry. Co. v. Anderson, 173 S. W. 908. Furthermore, the testimony referred to already that the bottom land, consisting of 232 acres, had a market value of $75 per acre before the construction of the dam, and by reason of such construction it was rendered worthless, was itself a sufficient basis for a finding that the market value of the tract as a whole had been diminished in an amount greater than the verdict returned, especially in the absence of any proof that after the injury the market value of the tract for other purposes was greater than it was for use as a farm. And in this connection it is to be noted that the charge of the court upon the measure of damages was in exact accord with the decision of our Supreme Court in Sherman Gas & Electric Co. v. Belden, 103 Tex. 59, 123 S. W. 119, 27 L. R. A. (N. S.) 237, which has been cited by appellant. It is to be noted further that appellant has cited no evidence, and we have found none in the record, which tended in any manner to show that plaintiff's land was not damaged by overflows, as claimed by him and as testified to by the several witnesses introduced by him, or controverting the testimony of plaintiff's witnesses upon the issue of values before and after such overflows.

For the reasons indicated, all of appellant's assignments of error are overruled, and the judgment is affirmed.